IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

GREGORY BREWER                                                                                   PLAINTIFF

v.                                            Civil No. 6:07-cv-6018

CHIEF HOLT; CAPTAIN MEL STEED                                                     DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Gregory Brewer (Plaintiff) filed this *pro se* civil rights action under 42 U.S.C. § 1983 on March 23, 2007. (Doc. 1). Plaintiff's Complaint was filed *in forma pauperis* (IFP) and certified to proceed on April 26, 2007. (Doc. 4). On January 4, 2008, Defendants' filed their Motion for Summary Judgment, which is the issue now before the Court. (Doc. 31). On April 17, 2008, the undersigned issued a Report and Recommendation regarding the Defendants' Motion for Summary Judgment. (Doc. 39). Plaintiff objected to the Report and Recommendation due to having also pled individual capacity claims against the Defendants. (Doc. 40). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2005), the Honorable Robert T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a second report and recommendation, reconsidering Defendants' Motion in light of Plaintiff's individual capacity claims. The original Report and Recommendation has been vacated and the undersigned enters the following Report and Recommendation, consistent with the Order of the District Judge.

**I. Background**

Plaintiff's claims stem from the time he was incarcerated at the Garland County Detention Center. Plaintiff has sued Chief Holt and Captain Steed for denial of medical treatment. Plaintiff

claims he is positive for the Human Immune Deficiency Virus (HIV) and requires medication for his condition. Plaintiff did not have medication with him when he was booked into the Garland County Detention Center. (Doc. 32, Ex. 8). Tommy Harmon, the jail nurse, noted that Plaintiff had given several explanations of where his medication was and who to contact for its retrieval, but none of these explanations or contacts appeared to know the Plaintiff well or to be able to provide Plaintiff's "chronic care" medication. (Doc. 32, Ex. 10).

From January 19, 2007 until February 10, 2007, Plaintiff claims he was given his chronic care medication, but that the medication had to be donated, rather than procured by the detention facility. (Doc. 38, ¶ 2). Plaintiff indicates he was without medication from February 10, 2007 until March 22, 2007. *Id.* From March 22, 2007 until April 23, 2007, Plaintiff claims he was given medication, but that the medication had to be supplied by his family, rather than procured by the detention facility. *Id.* He further claims he was not given his medications from April 23, 2007 until August 7, 2007. *Id.* On August 6, 2007 he states the facility ordered his medications for the first time. *Id.*

Plaintiff does agree he was offered antibiotics during the time in question. Plaintiff's claim that he was denied medication/medical care stems from the denial of his chronic care medications for HIV. (Doc. 38, ¶ 3).

Plaintiff made several relevant medical requests regarding his medication. On January 23, 2007, Plaintiff made a medical request to see the Doctor or Mike Melancon regarding a resistance test. (Doc. 32, Ex. 7). Mike Melancon is with the AIDS Crisis Center and vaguely knew Plaintiff. (Doc. 32, Ex. 10). Dr. Hale, the Garland County Detention Center Doctor, referred all of his HIV/AIDS patients to Mike Melancon. (Doc. 32, Ex. 10). The response by Nurse Harmon was

that he had spoken with Mr. Melancon, who stated he was not ready to do the test, yet. *Id.* Records show Mr. Melancon saw Plaintiff on January 31, 2007. (Doc. 32, Ex. 10). At this time, Mr. Melancon informed the Plaintiff that he could not come up with any more medications, and that Plaintiff needed to try and come up with medications on his own before he ran out. *Id.*

On February 11, 2007, Plaintiff filed his first grievance regarding a lack of chronic care medication. (Doc. 32, Ex. 7). The response by Nurse Harmon was that Mr. Melancon was to come see Plaintiff. *Id.* Nurse Harmon also prepared a memorandum of his interactions with Plaintiff and his efforts to secure his medications. (Doc. 32, Ex. 10). It shows that he contacted Mr. Melancon on February 10, 2007 about procuring more medication for Plaintiff, but that Mr. Melancon stated he could provide no more. *Id.*

Plaintiff also filed a grievance the following day, February 12, 2007, regarding his lack of medication. (Doc. 32, Ex. 7). Nurse Harmon responded that Mr. Melancon was notified and would be coming to visit Plaintiff. *Id.* On February 13, 2007, Plaintiff again filed a medical request regarding his lack of medication. *Id.* He also requested to see the Doctor and for a cold set up. *Id.* Plaintiff filed another medical request regarding his medications on February 15, 2007, stating he was refusing the cold medications and that he had missed 15 cycles of his chronic care medications and may have become immune. *Id.* Nurse Harmon responded that Mr. Melancon and Dr. Shelby were trying to secure the medications for Plaintiff. *Id.* Plaintiff also wrote a note to Nurse Harmon stating that the Nurse would charge him for the cold medications, but would not "spend a dime" to help keep him alive. (Doc. 32, Ex. 9). Nurse Harmon responded that Dr. Shelby and Mr. Melancon were "working on your medication." *Id.*

Plaintiff filed a medical complaint on February 20, 2007 stating that he was still without

medication. (Doc. 32, Ex. 8). Nurse Harmon replied that securing Plaintiff's medication was Dr. Shelby and Mr. Melancon's duty. *Id.* Plaintiff followed up that medical complaint with one on February 21, 2007. *Id.* Nurse Harmon responded that Plaintiff was unable to give the name of a doctor who ordered the medication for Plaintiff when he was not incarcerated and that Plaintiff needed to help secure his medications. *Id.*

Plaintiff did not file another medical complaint until March 14, 2007. On this date he requested to see the doctor because he might have internal bleeding. *Id.* Nurse Harmon responded that Plaintiff would see Dr. Hale, and Plaintiff was seen on March 15, 2007. (Doc. 32, Ex. 8).

On March 26, 2007, Plaintiff filed a medical complaint that he had only received one of his medications. *Id.* Nurse Harmon responded that the Veterans' Administration had provided the medications and that the medication would be sent to him and it was his choice to take it or not. *Id.*

On April 22, 2007, Plaintiff filed a medical complaint that he was once again out of medication and that the "on and off routine" was dangerous to his health. *Id.* Nurse Harmon responded that Plaintiff had been notified over a week prior that his medication was running out and he did not make any effort to help. *Id.* Plaintiff was further informed that Mr. Melancon and Dr. Shelby had done all they could to provide the medication. *Id.*

Plaintiff was seen by Dr. Hale on June 22, 2007. (Doc. 32, Ex. 8). On June 25, 2007 Plaintiff filed a medial complaint that he was sent medication that was not prescribed for him and he was refusing all medications from Nurse Harmon. *Id.* Nurse Harmon responded that the new order of the medication came in a different pill form and color and that it was correct for Plaintiff. *Id.*

**II.  Discussion**

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56 (c).  The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir.1992).  The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**A.  Official Capacity Claims**

Plaintiff's official capacity claims are tantamount to suing Garland County.  Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).  Because *Monell* specifically rejected liability based solely on *respondeat-superior*, *id.* at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity."  *White v. Holmes,* 21 F.3d 277, 280 (8th Cir.1994).  Rather, official-capacity liability must be based on deliberate indifference or tacit authorization. *Id.*

Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell,* 436 U.S. at 690-91.

Plaintiff has not articulated any custom or policy of Garland County which was responsible

for denying his constitutional rights. To the extent Plaintiff is arguing that having him assist in procuring and pay for his medication is a policy in violation of his constitutional rights, this assertion can not withstand summary judgment. The Eighth Amendment's prohibition against cruel and unusual punishment requires prisons to provide basic medical care to inmates, but does not require that medical care be provided at no cost. *See Estelle v. Gamble,* 429 U.S. 97, 103 (1976); *Reynolds v. Wagner,* 128 F.3d 166, 173-174 (3d Cir. 1997).

Plaintiff has not shown that he was denied necessary medical care or that serious medical needs were not addressed. *See Estelle,* 429 U.S. at 104 (deliberate indifference to inmate's serious medical needs constitutes cruel and unusual punishment); *Reynolds,* 128 F.3d at 175 (deliberate-indifference standard does not guarantee prisoners right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in our society). The undisputed evidence shows that efforts were made to secure Plaintiff's medications in various ways, and that Plaintiff's complaints were evaluated, rather than ignored.

Moreover, Plaintiff's claims against the Defendants appear to be based upon a *respondeat-superior* theory of liability. Plaintiff provides no evidence that Defendants Steed and Holt made any medical decisions or that they kept Plaintiff from receiving medical attention or care. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993) (section 1983 liability requires some personal involvement or responsibility). Accepting as true Plaintiff's allegations that Captain Steed told him he did not want to spend the money for Plaintiff's expensive medications, there is no evidence Captain Steed attempted to prevent the medical staff from securing the medications. Indeed, the record reflects a continuos effort by the

medical staff to provide Plaintiff with his chronic care medications. Plaintiff alleges no personal involvement of the Defendants in attempts to secure his medications and thus his claims against them can not survive Summary Judgment.

### B. Individual Capacity Claims

Plaintiff has not shown he was injured by the alleged denial or delay in medical care. The Eighth Circuit Court of Appeals has held that, "when the inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should also be measured 'by reference to the *effect* of delay in treatment.' " *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (quoting *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1188 (11th Cir. 1994) (emphasis in *Hill* )). "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill,* 40 F.3d at 1188 (footnote omitted).

Plaintiff alleges his C-D4 count is lower than when he was first incarcerated and "Doctors I've talked to believe its due to meds not working - which could be due to not having after so long, or off and on again." (Doc. 38, ¶ 6(a)). However, Plaintiff provides no medical records, affidavits by his current doctors, or other medical evidence that the drop in his C-D4 count is a result of his missed medications while housed at Garland County. Plaintiff also offers no evidence he is resistant to his current medications, and likewise no evidence any resistance is related to missing or being "on and off" his medications. Thus, summary judgment should be granted on Plaintiff's claims.

### III. Conclusion

For the reasons stated, I recommend that the Defendants' Motion for Summary Judgment (Doc. 31) be GRANTED in its entirety.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **16th day of May 2008.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE